The next case on the docket is the last case of the day, that's 5-19-139, People v. Biegeleisen, is that correct?  Biegeleisen, okay. Biegeleisen May it please the court, counsel, I'm Paige Strachan and I represent Jerry Biegeleisen in this appeal. This is an appeal from the dismissal of a post-conviction petition after the second stage of proceedings but prior to an evidentiary hearing. Just as a short background in this case, Mr. Biegeleisen was charged with three counts of predatory criminal sexual assault in Clinton County. All of the allegations involved a stepdaughter. The charges were amended over and over again and ultimately an Alfred plea to one count was entered. A contested sentencing hearing was held and Mr. Biegeleisen was sentenced to 40 years in prison. In his direct appeal, an issue was raised as to whether he had been admonished about restitution as part of his plea. He had not been but the court held that that was insignificant so his convictions and sentence were affirmed. So in the post-conviction petition, he raises three issues but really it's about, they're all ineffective assistance issues. Mostly it's about trial counsel. The issue as to post-trial counsel is that he did not capitalize on, he did not raise issues that were apparent of record. And those that he did raise, he did not support with additional information. That of course hamstrung direct appeal counsel because that left him with very little to raise and then he just raised that issue on restitution. So any issue that was apparent of record should have been raised by post-trial counsel, should have been raised by direct appeal counsel. And they did not do either of those things. That's how they're involved. So I'm going to focus on what trial counsel did not do because that's the heart of this. At the sentencing hearing, he presented one witness, the sister of the defendant, to identify a photograph of the defendant, his wife at the time, Sarah, and the four children taken on Mother's Day around about the time these things happened or were alleged to have happened, to show that this was a happy family. That was the extent of the mitigation evidence. The pre-sentence investigation report included within it several interesting things. One, it included a reference to the defendant having dropped out of high school and nothing about him obtaining a GED. He had obtained a GED. Despite that, trial counsel agreed that the PSI was correct and the court should consider it. That was just one example of just sloppiness, not paying attention to detail. It also included police reports. In fact, this is probably the most thorough PSI I've seen in 23 years. It had attached to the PSI a stack of police reports involving the investigation. They were never admitted into evidence in any hearing. Of course, they can't be. They're police reports. They're not admissible. Yet, trial counsel doesn't object to the court considering them, and the court referenced in detail things that he read in those reports when he imposed sentence. He talked about this being a pattern of abuse. He talked about other statements made by other children in the home. He made references to a lot of uncharged bad acts that were included in that, in those police reports, that should not have been attached to the PSI, should not have been considered by the trial court. Yet, defense counsel did nothing. He did nothing to stop that. Also, defense counsel agreed that the child advocacy center videos taken originally in Ohio and then another here back in Illinois could be considered by the court as well. Why would he do that? Included in those videos referenced two other uncharged conduct makes defendant look atrocious. Looks terrible based on the information that comes out in those videos. Never should have been considered by the trial court. Now, I understand sentencing is different. The standards of what is admissible and what is not admissible are a little bit different than we are at trial. But the bottom line is any evidence that is presented to the court has got to be reliable. That's why we have things like foundation requirements. That's why they exist, to make sure that these are accurate documents or accurate videos. There's all kinds of requirements and hoops that we have to jump through in order to present evidence to the court. But because defense counsel did nothing, none of that had to happen. So the video, was it in evidence at the trial? No, it wasn't trial. It was the offered plea. There had been discussion about, sure, the judge can look at those. Defense counsel agreed to that. Why? Why? To what end could that have helped his client? Now, of course, the state's going to argue, like most ineffective claims, that these are all trial strategy. Strategy is not boxing up all the evidence against your client and taking it to the judge. That's not good trial strategy. And if your trial strategy is so poor that it serves no purpose except to destroy your own client, that's not strategy. So we shouldn't whitewash this with the idea that, well, trial counsel made some decisions and he's entitled to do that. And we should have deference to him. We need to look more deeply. What in the world could he have gained by telling the court, sure, watch these videos where they talk about all kinds of terrible things my client did. Sure, let's read a police report where it talks about all kinds of terrible things my client did. It's not that those things might not have been considered, because obviously other bad acts can be considered. But we have to go through the proper channels to do it. We have to lay a foundation. The proper way to discuss the other bad acts that were talked about in the police reports was to put those witnesses on the stand and have them tell you. We don't do it through the admission of a police report. That cannot be challenged because the defendant cannot confront that witness. That's not how it's done. But that's what trial counsel let happen here. Another error that the trial counsel made, which I kind of alluded to when I told you about his big mitigation case, was that there were no witnesses to testify about anything good about the defendant. The defendant told defense counsel, I've got 20 witnesses here to talk in mitigation. And what trial counsel told him, according to the affidavit attached to the petition, is nobody wants to hear that. Nobody wants to testify. Well, we know that's not true. We knew it was not true at the time. We know it's not true now because I attached nine affidavits to the actual post-conviction of people who were there ready to testify about specific things. And not just generic information like the defendant's a good dude. It was specific stuff. Like how he housed a man, a friend of his, who had no home and he provided one for him. One who would testify about how he worked with him on cars and volunteered his time to help other people. Coworkers who testified about the generous things, who would have testified about the generous things the defendant had done for them throughout their lives. Emotional support, financial support, all kinds of help that this defendant has provided to a lot of people. All of whom were there at sentencing ready to testify, but were not allowed to because trial counsel didn't even talk to them. Just wrote them off as no one wants to testify. Now that's a question, that's an issue that post-trial counsel should have handled. He did raise the issue that in his post-trial motion that trial counsel had kind of dropped the ball there. But he didn't bring any of those witnesses. He didn't attach an affidavit. He didn't flush that out and do what he should do. So that's where post-trial counsel fell. At the post-conviction petition stage, at the second stage, all of those affidavits are there. All of them. So he has made a substantial showing that trial counsel is ineffective for any one of these things, let alone all of them. A substantial showing is made by attaching affidavits, parts of the record, other documents that support your claim if they're not already apparent of record. And he did all of that. And despite all of that, trial counsel dismissed the petition. The odd thing is, first, the trial court docketed it for an evidentiary hearing. That's the first thing they did. And that seemed to panic the state's attorney's office, so then they decided what they should do is file a motion to dismiss. So the original order docketing it for an evidentiary hearing, finding that he had made a substantial showing, was vacated. A motion to dismiss hearing was held, and the court did dismiss the petition. If you read through the actual order that the trial court entered, though, dismissing the petition, it appears to apply a completely different standard that ought to be applied at the second stage. All he had to do was make a substantial showing that what he was saying is true, and if true, it supports a claim of a constitutional violation. He has the right to effective trial counsel. He has the right to effective post-trial counsel. He has the right to effective direct appeal counsel. He made those allegations. The record does not refute them or is otherwise supported by affidavits or other documents that were attached, and that should have been enough to get him an evidentiary hearing. That's all that we're asking for. We want you to find that he did make that substantial showing, and we'd ask you to remand the case for further proceedings, which would include that evidentiary hearing he asked for in the first place. That's all we're asking for at this time. If the court has no other questions, that's all I have. Thank you. Good afternoon, Your Honor. As amended, please support counsel. My name is Patrick Daly. I am here on behalf of the state. This is, as counsel indicated, an appeal from the dismissal of the defendant's post-conviction petition at the second stage. This court exercises de novo review, as it does at any point in these proceedings, until there's an evidentiary hearing where the standard of review is much more deferential. Defendant bears the burden throughout to make a substantial showing of a constitutional violation at this stage. It is true, as counsel indicates, that all authentic facts that have been taken by this court is true. However, in that context, the court can consider those facts against the record and the extant proceedings to make a determination of whether or not there has been made a substantial showing of a constitutional violation. And it's in that context in which the people would argue here that the court's ruling was correct. Now, this is entirely an allegation of ineffective assistance to counsel, which is judged under the two-pronged Strickland v. Washington standard of whether competency of counsel. And what we're really relying upon here principally is whether there's an absence of prejudice as a result of the alleged deficiencies in counsel's representations. There are four or five, depending on how you want to break it down, allegations that the defendant raises in his petition. At this stage, this court can agree with all my arguments, or just some of them, and advance other arguments or other issues on to the third stage, after arresting this court to affirm the trial court's judgment in its entirety. So what I'd like to do here, excuse me, is to go through each of the allegations individually and explain to this court why the court's ruling below was correct. Starting first with the allegation of the introduction of the Children's Advocacy Center video. This is not an Illinois, but I think an Ohio CAC video. And there are also interviews and interrogations and questioning of the victim by Detective Bertram. There is a record transcript here where the court is approached by the parties, and they advise the court, you know, rather than playing these videos and go through all this here, why don't we go ahead, we're going to go ahead and stipulate to the admission of these videos, and the court can watch it in its own, and then it will become part of the process later on. The defendant says that this is the procedure, the defendant's counsel says this is the procedure we want to do. The defendant was actually questioned briefly by the court whether this was acceptable to him, and he said yes. He was aware of what was happening. So the defendant's argument here sort of fluctuates between, well, there was no foundation being laid, and therefore counsel was ineffective for not objecting, but of course these videos were admitted by virtue of stipulation. So then the argument then kind of pivots to, well, what reasonable reason would there be to not object to these videos? Well, the reason is that these videos are going to come in. Number one, it's debatable whether the restrictions of 115-10, which would allow the admission of these videos in a trial setting, is even necessary here when we're in the sentencing proceeding. But even if they were, the victim was there. She is ready to testify. She did testify at the sentencing hearing. So would it have been not anything for the State to basically lay the foundation for the admission of these videos? It's certainly reasonable for counsel to see that it would not serve any purpose really to prolong or to aggravate the judge when these videos are certainly going to come in. So it is, of course, always the essence of the claims of ineffectiveness as a counsel that there's deference to the defense attorney's strategic decision-making about what witnesses to call, what objections to raise, et cetera. This Court defers to that unless it's absolutely or willingly an unreasonable decision. And in this case, that's not the case here. With regards to the attachment of the reports from Detective Boettcher, if I'm pronouncing that correctly, I think we need to first start out here with a little bit of specificity about what this reports, what the Court's reference to these reports contain. Your Honor's rule read in the Court's verbal sentencing decision that he discusses the collected statements of three individuals. I believe they were children that were residing with the victim in this case and what their observations were, largely that the defendant would take the victim into the garage or something like that, close the doors, windows. That's really the extent of the Court's reference to it. And the Court qualifies seniority to bring this up is because there's sort of this implication, which is derivative of trial counsel's arguments in sentencing, that this is just a simple he said, she said. A lot of the argument by counsel is sort of focused on kind of impairing the strength of the State's case here, and the Court wasn't buying it. Courts have very broad latitude in its consideration of facts and sentencing. Really, almost anything is admissible, including hearsay, provided there's some indicia of reliability. In this instance, trial counsel reasonably perceived, as defendant argues here, well, why didn't the State just put on the witness? Well, certainly the State could have. It's the State's witness. It wouldn't have been anything to put detective on. Again, this is something that trial counsel could perceive and realize that it's not, it would be a futile process to object to the consideration of the reports, which are otherwise admissible and considerable by the Court at the time of sentencing. Moreover, there's no indication here that trial counsel was unaware of these reports, what their contents were, whether they were not disclosed in discovery. There's no surprise. In the end, it always goes to weight and not invisibility. And the Court's weight here, I think, looking at the context of it, was not, as counsel argues here, to say it was a bad guy for other things that he did, but rather to put into context the Court's disagreement with trial counsel's sort of framing of the factual evidence in this case and why that should be mitigated, which is obviously a very important consideration in sentencing as the offense itself. With regards to errors in the pre-sentence investigation report, again, I would hone in here. The defendant's argument is sort of two-pronged. Both the utilization of a static-99R report as an actuarial device to assess recidivism probabilities and also whether the defendant obtained a GED, I would argue really in response to both of these considerations, that, again, it comes down to a matter of prejudice. The Court's focus here, you'll see, Your Honors, from the Court's findings focused on the offense, the recorded interviews, the defendant's lack of acceptance of responsibility, which is sort of inherent in the offer plea itself, which is a guilty plea without admission of guilt, the defendant's criminal history, a verbal conviction. In fact, critical to the Court was the defendant's supervisory position over the victim as the victim's stepfather. The Court emphasized these considerations. The presence or lack of potential recidivism did not play into the Court's rationale at all nor was there any reference at all to whether the defendant obtained a GED or not, simply because there may have been some things overlooked, and the PSI does not, should or should not have resolved these details into an established claim or even a substantial claim of ineffective assistance to counsel, where the record shows that it really had no effect one way or the other in how the Court was tilting in the decision that was going to make its sentencing here. And finally, with respect to the mitigating evidence and the witnesses' statements, the Court will see reference, as early as at the time of the sentencing hearing, the Court almost sort of disdainfully remarking on the number of people that showed up,  and remarking, you know, I find it just odd that people, and the Court called it a cognitive dissonance of all the support for a person who has been found guilty or pleaded guilty to committing, you know, a rather heinous sex offense, a corpse clearly not impressed by even just the presence of the people, when post-trial counsel, I think probably not, you know, sort of not very well, attempted to argue that but didn't include the affidavits from any of these individuals. Of course, the Court made it clear that they don't care. If the only thing that these people are going to be testifying to is the defendant's a great guy, that's not the kind of thing that I find very persuasive. Now we have the affidavits, and we see that, you know, the Court's concerns about the type of evidence it's going to hear was true. In fact, it works for that. At least three or four of those witnesses' affidavits said the defendant, not only a great guy, he's very protective of the stepchild, inclusive of the victim, I suppose, in this case, who he had been molesting for years. This is not something that the Court was going to find very persuasive. In fact, trial counsel could reasonably perceive that a court would be offended by the notion that somehow its decision-making should be influenced positively for the defendant because he's a great caretaker for a person he'd been molesting for years. So in sum, at this stage, at the second stage, where the burden is on the defendant, shows substantial deprivation of the constitutional right. The defendant failed, and the trial court properly dismissed the petition. Does the Court have any questions? Thank you, Your Honor. Mr. Clough? Just very briefly. I'm so glad you brought up the static 99-R, because that's my favorite part, and I forgot to talk about it. That is another major error that trial counsel made. First of all, if you'll read the attachments to the post-conviction petition, it explains what the purpose of a static 99 actual aerial test is. But I can sum it up for you. It is supposed to be used on people who have been convicted and have committed multiple acts of sexual misconduct to determine what their percentage rates are of recidivism. What's the likelihood? So first of all, it's not supposed to be used on someone who is being sentenced. I understand it has been occasionally used. But if you read the documents that are attached to the petition, the developers of the test said that's not what it's for. But it was attached to the petition. Trial counsel agreed it ought to be considered. And then he really dropped the ball. This defendant scored really low. He didn't score high. He scored low on that, low risk of recidivism. That is a vital issue when it comes to sentencing. Did trial counsel even talk about it? No. He said nothing. He left a huge piece of evidence right there on the table without bringing it to the court's attention and arguing how that should be used. But it did come in as evidence. It was attached to the PSI that the state says nobody considers anyway. So it could easily be misunderstood without an explanation of what this is about, how it should be used, and how it means this particular defendant isn't likely to commit another crime. None of that was argued. Just left it there. It was attached to PSI but not referenced in the PSI? I don't know that it was referenced in the PSI. It was definitely attached to it, and trial counsel did not make any comment about it at all. It should have been the linchpin of his argument that here we've got some science, and the science says he's not going to commit another crime. His likelihood is so low. But he never said that. And I cited a bunch of cases in my brief. A bunch might be exaggerating. Some about how persuasive that sort of evidence is. It's the only scientific thing that we have in this case has to be persuasive. They commit people all day long in trials, all day long in this state, based only on those numbers. So we know they matter. We know they're persuasive. Yet nothing was done with it here. As far as... Let's see what else I want to respond to. Oh, the prejudice issue. Absolutely the defendant has got to show prejudice in order to establish that there's been ineffective assistance of counsel. But I want you to look at what the sentencing range was here. It was 6 years to 60 years. 6 to 60. This is a man with one conviction from 1999. This is a man who has been employed. This is a man who has done things with his life. May have dropped out of school, but he took the initiative to get a GED. He has accomplished things. He's been a relatively good citizen most of the time. And yet he gets a sentence of 40 years. There's a lot of land between 6 and 40. And while the state's arguing that the trial court probably would not have been persuaded by any mitigating witnesses that we attach affidavits from, we know 100% no court has ever been persuaded by evidence they didn't hear. It's not like trial counsel had 6 minutes to argue his mitigation case. And he had to choose what one piece he thinks might be helpful and discard everything else. That's not how it works. And the idea that we shouldn't aggravate a judge... But if we've got to aggravate a judge to do our job, then that's what we've got to do. We've got to make our record. We have to set things up for appeal if that's what's going to happen. It's part of our ethical obligation. And the fact is, in this case, trial counsel blew it. He made error after error after error. And when you consider them all together and consider the fact that this man was given a 40-year sentence, you cannot discard out of hand the idea that this court was prejudiced by what trial counsel didn't do. And that has affected the defendant. And that's what matters. There are parts throughout... Opposing counsel mentioned that there was a discussion that defendant agreed that the court could see the CAC videos. I don't doubt that for a second. Transcript says they discussed that. Do you think he had a clue what that meant? Do you think if his attorney, who has practiced for 40 years, didn't understand that that was not proper evidentiary law, do you think this old boy from Clinton County understood it? Do you think his agreement that the court should be able to see CAC videos means anything if he doesn't have the basis for understanding what that means, how that can hurt him, what the law is? This is out of manual labor. I think he worked at the factory. He doesn't have the legal background to understand what that means. So I hope you're not too persuaded by him going along with the attorney that he hired to take care of him. When the attorney asks a question, he says yes, because he trusts his attorney. That shouldn't completely destroy him. It's already hurt him pretty seriously. It shouldn't be enough to destroy him in this court, too. So I'd ask that you would remand this for an evidentiary hearing. Thank you. The court will take the case under advisement, and the court will come down in a reasonable period of time. And the court will adjourn until 9 o'clock tomorrow morning.